IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | * |
| | * |
| v. | *   Criminal No. SAG-10-700 |
| | * |
| **MICHAEL SPEED,** | * |
| | * |
| **Defendant.** | * |
| | * |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Michael Speed is serving the final few months of his 132-month sentence for possession with intent to distribute controlled substances and possession of a firearm in furtherance of a drug trafficking crime. He has filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release" statute), ECF 150. Court-appointed counsel filed a supplement in support of the motion, ECF 157, the Government filed an opposition, ECF 160, and Speed filed a reply, ECF 162. For the reasons set forth below, Speed's motion will be granted. His sentence will be reduced to time served plus 14 days, followed by a four-year term of supervised release, of which the first five months will be served on home confinement.

**I.    Background**

Following a guilty plea, Speed was convicted of one count of possession with intent to distribute cocaine base, and one count of possession of a firearm in furtherance of a drug trafficking crime. ECF 26 (Plea Agreement). On February 27, 2012, United States District Judge J. Frederick Motz sentenced Speed to a total of 132 months' incarceration, followed by a four-year term of

supervised release.[1]  ECF 31.  Speed is currently in BOP custody at FCI Allenwood Medium, and his projected release date is April 8, 2021.  ECF 160-1.

In December 2018, Congress enacted the First Step Act.  *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018).  As part of the Act, Congress amended 18 U.S.C. § 3582(c), which empowers courts to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction."  *See* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239.  The First Step Act eliminated the restriction allowing a court to review a prisoner's sentence pursuant to § 3582(c)(1)(A) only "upon motion of the Director of the Bureau of Prisons" ("BOP") and permits a court to conduct such a review "upon motion of the defendant," if the defendant fulfills certain prerequisites.  Specifically, the defendant must have exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or 30 days must have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier.  *Id.*  If those prerequisites are met, the court may authorize compassionate release if, after considering the factors set forth in 18 U.S.C. § 3553(a), the court finds that "extraordinary and compelling reasons" warrant such action.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

The Government does not contest that Speed has exhausted his administrative remedies.  ECF 160 at 4 (noting that Speed's request for compassionate release to the Warden of FCI Allenwood was denied on September 4, 2020).  Accordingly, the only issues are (1) whether "extraordinary and compelling reasons" warrant reduction of Speed's sentence and (2) whether the § 3553(a) factors weigh in favor of such a reduction.

---

[1] After certain of Speed's post-conviction motions were denied, and the Court's rulings on those motions were vacated by the Fourth Circuit, on August 19, 2016, Judge Motz entered an amended judgment, again sentencing Speed to 132 months' incarceration.  ECF 94.

## II.   Discussion

The Court must first consider whether Speed has presented an "extraordinary and compelling reason" justifying further consideration of compassionate release. Under 28 U.S.C. § 994(t), the United States Sentencing Commission is responsible for defining "what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). The Commission's Policy Statement provides that "extraordinary and compelling reasons" exist where (A) the defendant is suffering from a terminal or serious medical condition; (B) the defendant is over 65 years old, has failing health, and has served at least ten years or 75 percent of his sentence, whichever is less; (C) the caregiver of the defendant's minor child dies or becomes incapacitated, or the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver; or (D) "other reasons" as determined by the BOP. *See* U.S.S.G. § 1B1.13 cmt. n.1(A)-(D). The BOP criteria for "other reasons" justifying a sentence reduction are set forth in Program Statement 5050.50 ("Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)"). This Court, like other courts, has determined that it possesses independent discretion to determine whether there are "extraordinary and compelling reasons" to reduce a defendant's sentence. *See United States v. Decator*, 452 F. Supp. 3d 320, 323-24 (D. Md. 2020) (citing cases).

Speed asserts he is eligible for compassionate release on the basis of underlying medical conditions, including Type II diabetes and obesity, that increase his risk of serious complications from contracting COVID-19. *See, e.g.*, ECF 157-1 at 4. The Centers for Disease Control ("CDC") has issued guidance on the underlying conditions that increase an individual's vulnerability to COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-

with-medical-conditions.html (last updated Oct. 16, 2020). The CDC distinguishes between those conditions where individuals "are at increased risk," and those where individuals "might be at an increased risk." *Id.* "Obesity" and "Type 2 diabetes mellitus" are both in the former, more serious, group. *Id.* Speed also suffers from hypertension, and "might be at an increased risk" as a result of that additional condition. *Id.*

The Government's opposition contains contradictory assertions on the point, but ultimately appears to concede that Speed's two medical conditions constitute an "extraordinary and compelling" reason under the Sentencing Commission's Policy Statement that could render him eligible for relief, if he did not pose a danger to the community."[2] ECF 160 at 18-19. This Court agrees.

Moreover, Speed is at greater risk of infection and resulting complications because of his incarceration. According to the CDC, COVID-19 is likely to spread more quickly in correctional facilities than in non-correctional environments. *See Coronavirus Disease 2019 (COVID-19): Guidance for Correctional & Detention Facilities*, CDC [hereinafter *CDC Guidance for Correctional Facilities*], https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Oct. 21, 2020); *see also Coreas v. Bounds*, 451 F. Supp. 3d 407, 413 (D. Md. 2020) ("Prisons, jails, and detention centers are especially vulnerable to outbreaks of COVID-19."). Incarcerated individuals are often housed in

---

[2] In prior sections of its opposition, the Government made apparently inconsistent statements, such as Speed's "fear of contracting the novel coronavirus does not rise to the level of 'extraordinary and compelling' reasons making him eligible for a sentence reduction," ECF 160 at 1; "he is not eligible for compassionate release based on his alleged medical conditions and COVID-19, and because he remains a danger to the community," *id.* at 16; "Speed's Type II Diabetes and Obesity Medical Conditions Constitute an 'Extraordinary and Compelling Reason' in Light of the CDC's Guidance," *id.* at 17. Ultimately, it appears to this Court that the Government concedes that Speed's medical conditions qualify as "extraordinary and compelling," but that the Government maintains that Speed should not be released because he remains a danger to the community.

close quarters, with limited access to cleaning supplies and PPE, and limited ability to engage in social distancing. *CDC Guidance for Correctional Facilities*, *supra*; *see also Coreas*, 451 F. Supp. 3d at 414. BOP data confirm that FCI Allenwood Medium is currently experiencing an outbreak of COVID-19. *See COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (indicating 18 inmate and 11 staff cases of COVID-19 as of October 25, 2020). That number appears to have remained relatively consistent over recent weeks. *See* ECF 157-1 at 15 (describing that FCI Allenwood experienced its first positive case on September 22, 2020, and had 30 positive test results by October 2, 2020); ECF 160 at 16 (noting 21 inmates and 11 positive staff as of October 19, 2020); ECF 162 at 1 (noting 17 positive inmates and 11 positive staff members as of October 22, 2020). While, as compared to the overall number of inmates at the facility, the number with positive test results is relatively small, the persistence of the virus at the facility, along with the conditions of incarceration described earlier, increase the risk to Speed.

Accordingly, this Court concludes that Speed's medical conditions and the current COVID-19 outbreak at FCI Allenwood Medium together constitute an extraordinary and compelling reason for a sentence reduction, permitting this Court to continue its analysis. Before reducing a defendant's sentence for "extraordinary and compelling reasons," though, this Court must consider the factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." *See* 18 U.S.C. § 3582(c)(1)(A).

Looking at the continued danger Speed poses to the community, the Court considers a number of factors including the nature and circumstances of his offense, the weight of the evidence against him, and his history and characteristics. 18 U.S.C. § 3142(g). Speed's original offense of conviction was certainly serious, and posed a meaningful danger to the community. However, this

Court is cognizant that Speed is just over five months removed from his scheduled release from incarceration, making the danger he poses as a result of his original offense a decade ago less acute. *See* ECF 160 at 20 (conceding that "serving over ten years in federal prison would ordinarily mitigate against any danger posed by Speed if he were released"). However, the Government quite correctly notes that Speed's prison disciplinary history has been less than stellar. *Id.* Speed has accumulated no fewer than seventeen infractions, including as recently as August, 2020. *Id.* at 20-21. A closer review of his record, however, reveals that the vast majority of the infractions result from positive drug tests. *Id.* Speed entered BOP with a serious drug addiction, and it is clear that the treatment he has received while incarcerated has been ineffective. *See* ECF 32 at 3 ("Defendant's criminal history is explained almost entirely by his drug addiction . . . ."). Whether Speed is released from incarceration in the next few weeks, or in April, 2021, it seems unlikely that his longstanding addiction will be well-controlled. He will have to ensure his compliance with the drug treatment protocol put in place by his supervising probation officer in order to avoid being returned to prison for violation of his probation conditions. It does not appear, however, that Speed poses a significantly greater danger to the community today than he will five months from now.

This Court also places great weight on Speed's other post-sentencing conduct, which "provides the most up-to-date picture of his 'history and characteristics.'" *Pepper v. United States*, 562 U.S. 476, 492 (2011) (citing 18 U.S.C. § 3553(a)(1)). In Speed's years in the BOP, he has participated in a range of educational and vocational programming and has earned his GED. ECF 157-5. His cousin, with whom he proposes to reside upon release, stated, "Throughout this journey, I have witnessed Michael transform. He has matured in more ways than one. . . . He has mentored me to keep focused in doing the right [] thing so that I would not make the same mistakes that he has made in his past." ECF 157-6.

The § 3553(a) factors also require the Court to ensure that a sentence reflects the seriousness of the offense, promotes respect for the law, and affords adequate deterrence. *See* § 3553(a)(2)(A)-(B). As noted above, Speed has nearly fulfilled his original sentence of 132 months, and the remaining few months can be satisfied by a period of strict home confinement, which will best protect Speed from the risk of the novel coronavirus, while protecting society from any remaining danger posed by Speed.

Accordingly, the Court finds that the § 3553(a) factors, on balance, weigh in favor of granting Speed's motion for compassionate release.

### III. CONCLUSION

For the foregoing reasons, Speed's motion for compassionate release will be granted, and his sentence will be reduced to time served plus fourteen days, followed by a four-year term of supervised release. The BOP will ensure that Speed is appropriately quarantined for 14 days at FCI Allenwood Medium prior to his release.

To ensure supervised reentry to the community consistent with public safety, the first five months of supervised release will be served on home confinement. For the first 14 days, Speed will remain self-quarantined at the residence approved by the U.S. Probation Office ("Probation"), and will not leave that residence except for medical or other emergencies. For the remainder of the five-month period, Speed will not leave his approved residence, except for activities approved in advance by Probation. All other terms and conditions of supervised release to which Speed was originally sentenced will remain in place, with the added condition that he will be required to comply with all directives of federal, state, and local governments related to public health issues, including COVID-19. A separate order follows.

DATED: November 5, 2020            /s/
                                   Stephanie A. Gallagher
                                   United States District Judge